IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS STOCKLEY, JR., ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DARBY BOROUGH, ET AL. | : | NO. 10-688 |

**MEMORANDUM**

Padova, J.                                                                                            February 23, 2011

Defendant Darby Borough Police Chief Robert Smythe has filed a Motion to Dismiss Plaintiff's Second Amended Complaint, which asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. For the reasons that follow, we grant the Motion in part and deny it in part.

**I.  BACKGROUND**

The Second Amended Complaint alleges that, from 1996 to the present, Plaintiff Curtis Stockley, Jr., an African-American male, has been the elected Constable of Darby Borough in Delaware County, Pennsylvania. (Second Am. Compl. ¶¶ 7, 9-10.) At all relevant times, Defendant Robert Smythe was the Chief of the Darby Borough Police Department ("DBPD"). (Id. ¶ 8.)

According to the Second Amended Complaint, Stockley, as Constable, is responsible for transporting prisoners and serving warrants. (Id. ¶ 11.) He is compensated for each warrant he serves and for each person he transports. (Id.) On or about January 2, 2007, Defendant Chief Smythe ordered that a directive be sent to the DBPD that Stockley was no longer allowed to transport DBPD prisoners or use the Darby Prison System jail facilities for any purpose. (Id. ¶ 19.) Around the same time, "a meeting was held" at which it was decided that Stockley was no longer allowed in the Darby Police Station.[1] (Id. ¶ 21.) Smythe's January 2007 directive has "prevent[ed] [Stockley] from performing the duties of a Constable and inhibit[ed] his ability to earn a living."

---

[1]The Second Amended Complaint does not state who was at this meeting.

(Id. ¶ 19.) Moreover, "[s]ince January 2, 2007 until present day, [Stockley] has been fearful to execute any warrants because he is afraid that he will not receive back-up from the DBPD." (Id. ¶ 22.)

Starting in November 2006, Stockley was also employed as School Investigator for the William Penn School District. (Id. ¶ 13.) In a January 2007 meeting, Defendant Smythe told the School District's superintendent and assistant superintendent that Stockley was a member of the Wheels of Soul Motorcycle "Gang," when, in fact, Stockley has not been a member of the Wheels of Soul Motorcycle "Club" for many years. (Id. ¶¶ 14-15.) Smythe also told the two superintendents that he was tired of Stockley "telling politicians that 'the White Man' is running Darby Borough." (Id. ¶ 16.) Stockley "believes and therefore avers that . . . Smythe called . . . Stockley a racist to the Superintendent and Assistant Superintendent" in that January 2007 meeting. (Id. ¶ 17.) These comments were "intended to humiliate [Stockley] and intefere with his performance at work." (Id. ¶ 18.)

In the meantime, Stockley was "aware of discrimination against African American police officers [in Darby Borough] . . . that included threats of physical violence, work-related discipline levied against African American employees and not against the Caucasian employees involved in the same incidents, and Caucasian employees responding to radio calls late, leaving scenes early or not showing up at all." (Id. ¶ 23.) The DBPD also "falsely charged [Stockley] with harassing his neighbor" and "falsely charged" Stockley's son with gun crimes. (Id. ¶ 27-28.) All of these charges against Stockley and his son were subsequently dismissed for lack of evidence. (Id. ¶ 28.)

The Second Amended Complaint asserts three causes of action. Count One asserts a claim under 42 U.S.C. § 1983 that Smythe violated Stockley's rights under the Fourth Amendment and the

Equal Protection Clause of the Fourteenth Amendment by depriving Stockley of the right to earn a living on the basis of his race. Count Two asserts a claim under 42 U.S.C. § 1983 that Smythe created a racially hostile work environment in violation of Stockley's rights under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. Count Three asserts that Smythe conspired to deprive Stockley of his civil rights, including his right to equal protection, in violation of 42 U.S.C. § 1985. Smythe has moved to dismiss all three Counts of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## II. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v.

---

[2]When this action was originally filed, there were three plaintiffs and seven defendants. Defendant Smythe's instant Motion is the third motion to dismiss that has been filed. We dismissed the first motion as moot after the three original plaintiffs filed a First Amended Complaint. We granted the second motion to dismiss, and dismissed the First Amended Complaint in its entirety, but we granted Stockley leave to file a Second Amended Complaint on or before November 4, 2010, to more clearly state his claims against Smythe. After the November 4 deadline had passed, Stockley mailed a Second Amended Complaint to Chambers, but did not file it with the Clerk of Court. As a courtesy, we forwarded the Second Amended Complaint to the Clerk for filing, and the Clerk docketed the Second Amended Complaint on November 18, 2010. (See Docket No. 19.)

Now, in response to Smythe's Motion to Dismiss the Second Amended Complaint, Stockley has submitted a Third Amended Complaint, attaching it as an exhibit to his Memorandum in response to Smythe's Motion. Furthermore, in his responsive Memorandum, Stockley largely argues that the Third Amended Complaint withstands Rule 12(b)(6) scrutiny, instead of focusing on the adequacy of the operative Second Amended Complaint. In any event, we will not consider the Third Amended Complaint at this time, because Stockley neither sought leave nor obtained Smythe's consent to file it. See Fed. R. Civ. P. 15 (a)(1), (2) (setting forth the requirements for the filing of an amended pleading). Nevertheless, we have reviewed the Third Amended Complaint and we note that, if we did consider it, we would conclude, as we do in connection with the Second Amended Complaint, that only Count I states a claim upon which relief may be granted.

County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). In the end, we will grant a Rule 12(b)(6) motion if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

## III. DISCUSSION

### A. Count I – Equal Protection

In Count I of the Complaint, Stockley asserts a claim under 42 U.S.C. § 1983 that Smythe violated his rights under the Fourteenth Amendment's Equal Protection Clause by discriminating

against him on account of his race.[3] Smythe argues that this claim should be dismissed because Stockley has failed to allege that he was treated differently from persons who are similarly situated.

"'To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination.'" Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ., 587 F.3d 176, 196 (3d Cir. 2009) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990)). Specifically, "[a] plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class . . . or that he has been treated differently from similarly-situated others . . . ." Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing City of Cliburn v. Cliburn Living Center, 473 U.S. 432 (1985)).

The Second Amended Complaint alleges that Smythe made arguably racist remarks regarding Stockley to two superintendents at a school district where Stockley worked. It also alleges facts that suggest that racism was pervasive at the DBPD, and that Smythe took actions to bar Stockley – and only Stockley – from both using DPBD offices and transporting DPBD prisoners on account of Stockley's race. While the facts alleged are not plentiful, we conclude that, drawing all inference in favor of Stockley, the facts are sufficient at this stage of the litigation to state a facially plausible Equal Protection claim against Smythe.[4] We therefore deny Smythe's Motion to Dismiss insofar as

---

[3]Count I of the Second Amended Complaint also asserts that Smythe violated Stockley's rights under the Fourth Amendment. However, Stockley's Memorandum in response to the Motion to Dismiss makes clear that he is no longer pursuing a claim under the Fourth Amendment. (See Pl.'s Mem at 4, 7-8.) We therefore dismiss Count I insofar as it asserts a Fourth Amendment claim.

[4]We note, as an aside, that Stockley alleges in his unfiled Third Amended Complaint that Smythe "has allowed white constables from other neighboring municipalities to use DBPD offices and jail facilities when they serve warrants and transport prisoners." (Proposed Third Am. Compl. ¶ 29.) However, we do not consider or rely on this allegation in concluding that Stockley has stated

it seeks dismissal of the Equal Protection claim in Count I of the Complaint.

  B.  Count II – Hostile Work Environment

In Count II of the Second Amended Complaint, Stockley asserts a claim under 42 U.S.C. § 1983 that Smythe created a racially hostile work environment in violation of Stockley's rights under the Fourteenth Amendment's Equal Protection Clause.[5] Smythe argues that Stockley has not stated and cannot state a claim for hostile work environment both because he is not an employee of Smythe or the DBPD and because he has not alleged conduct that is severe and pervasive enough to support a hostile work environment claim.

As we noted in a prior opinion, it is not certain that a plaintiff may bring a hostile work environment claim under § 1983 in this jurisdiction. See Pollock v. City of Phila., Civ. A. No. 06-4089, 2008 WL 3457043, at *8-9 (E.D. Pa. Aug. 8, 2008). However, to the extent that such a claim is permissible, its prima facie elements are the same as those under Title VII.[6] Id. at *9 (citations omitted); Cross v. Alabama, 49 F.3d 1490, 1507-08 (11th Cir. 1995) (stating that "'[w]hen section 1983 is used as a parallel remedy for [a] violation of . . . Title VII . . . , the elements of the two causes of action are the same.'" (quoting Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th

---

an Equal Protection claim upon which relief may be granted.

  [5] As with Count I, Count II asserts a claim under the Fourth Amendment, but Stockley's memorandum in response to Smythe's Motion makes clear that he is no longer pursuing any Fourth Amendment claim. (Pl.'s Mem. at 4, 8-12.)

  [6] Stockley points out that courts have recognized analogous "hostile environment" causes of action that may be asserted by students under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and by independent contractors under 42 U.S.C. § 1981. See Saxe v. State College Area Sch. Dist., 240 F.3d 200, 205 (3d Cir. 2001) (citations omitted); Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 12-14 (1st Cir. 1999). However, Stockley does not allege that he is a student and does not allege that he had a contract with DBPD or Smythe. Accordingly, these analogous causes of action are not available to him.

Cir. 1982))).

Title VII, by its terms, makes it "an unlawful employment practice for an <u>employer</u> . . . to discriminate against any individual with <u>respect to his compensation, terms, conditions, or privileges of employment</u>, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Moreover, "to be actionable, the [hostile work environment] harassment must be so severe or pervasive that it alters <u>the conditions of the victim's employment</u>." <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 426 (3d Cir. 2001) (emphasis added) (citations omitted). As such, "the lack of an employment relationship between the plaintiff and the defendant will preclude liability under Title VII." <u>Tyrrell v. City of Scranton</u>, 134 F. Supp. 2d 373, 380 (M..D. Pa. 2001) (citing <u>United States v. Bd. of Educ. for Sch. Dist. of Phila.</u>, 911 F.2d 882, 891 (3d Cir. 1990)).

Here, the Second Amended Complaint does not allege that Stockley was an employee of Smythe or the DBPD; conversely, neither Smythe nor DBPD are alleged to be Stockley's employers. Indeed, in Stockley's capacity as Constable, he does not even qualify as an "employee" as that term is defined in Title VII, because he is an elected official. 42 U.S.C. § 2000e(f) (providing that the term "employee" does not include "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof"). Accordingly, Stockley has not stated and cannot state a claim upon which relief may be granted against Smythe based on a hostile work environment theory and we dismiss Count II in its entirety.

C. <u>Count III – Conspiracy</u>

In Count III of the Second Amended Complaint, Stockley asserts a claim against Smythe under 42 U.S.C. § 1985 for conspiracy to interfere with his right to equal protection. Smythe has moved to dismiss this claim under Fed. R. Civ. P. 12(b)(6), noting that the Second Amended

Complaint does not identify the individual or individuals with whom Smythe allegedly conspired, "does not establish a racial-based discriminatory animus," and does not allege "any injury or deprivation of any right . . . to which [Stockley] is otherwise entitled." (Def.'s Mem. at 11.)

Section 1985(3) of Title 42 of the United States Code provides a cause of action when "two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws . . . ." To state a claim under § 1985(3), a plaintiff must allege the following elements:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to [sic] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Significantly, "'[t]he [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'" United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 835 (1983) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). As such, "intentional discrimination must motivate the group" and "[w]here . . . the plaintiff alleges that only one conspirator was so motivated, the conspiracy does not fall within the scope of § 1985(3)." Straker v. Metro. Transit Auth., No. 03-CV-1756, 2005 WL 3287445, at *3 (E.D.N.Y. Dec. 5, 2005) (citation omitted); see also Doe v. Sizewise Rentals, LLC, Civ. A. No. 09-3409, 2010 WL 4861138, at *8 (D.N.J. Nov. 22, 2010) (stating that a § 1985(3) conspiracy requires that the conspirators share a "common animus" (citing Farber v. City of Paterson, 440 F.3d 131, 136 (3d Cir. 2006)).

Here, Stockley's Second Amended Complaint alleges that Smythe conspired "with other DPBP members" to deprive Stockley of his rights. (Second Am. Compl. ¶ 26.) However, Smythe does not allege that the unnamed DPBP members shared Smythe's alleged racial animus or were themselves motivated by any racial animus. Under these circumstances, Stockley has failed to allege a plausible conspiracy claim because he has not alleged – or pled facts that raise a reasonable inference – that Smythe and other DBPD members were jointly motivated by a racial animus and, so motivated, conspired to deprive Stockley of his right to equal protection. We therefore grant Smythe's Motion to Dismiss insofar as it seeks dismissal of Count III, the conspiracy claim.

## IV. CONCLUSION

For the foregoing reasons, we grant Smythe's Motion to Dismiss the Second Amended Complaint insofar as it seeks dismissal of Counts II and III, as well as the Fourth Amendment claim in Count I. However, we deny the Motion insofar as it seeks dismissal of Stockley's claim in Count I that Smythe violated Stockley's rights under the Fourteenth Amendment's Equal Protection Clause.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.